**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VIDAL SOLER and COREY STEWART, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>FRESH DIRECT, LLC and FRESH DIRECT HOLDINGS, INC.,<br><br>               Defendants. | CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

Plaintiffs Vidal Soler and Corey Stewart ("Plaintiffs"), individually and on behalf of all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## SUMMARY OF THE CLAIMS

1.      This case challenges the flawed, overbroad and discriminatory criminal conviction screening policies and practices used by Defendants Fresh Direct, LLC and Fresh Direct Holdings, Inc. (together, "FreshDirect" or "Defendants") to deny employment to otherwise qualified job applicants, like Plaintiffs, throughout New York State.

2.      The ability to find employment is an essential aspect of reentering society for people with criminal histories.  Recidivism declines when individuals have viable employment prospects and other stabilizing resources in their communities.

3.      New York City and State have long understood the importance of gainful employment for individuals with criminal convictions and, accordingly, both jurisdictions mandate that an employer cannot deny employment to individuals with criminal convictions unless it performs a thorough and individualized analysis of specific "Article 23-A" factors and

properly determines, based on that analysis, that the individual poses an unreasonable risk or possesses convictions that are directly related to the ability to perform the job sought.

4.      FreshDirect's criminal history policies and practices do not comply with New York law.

5.      FreshDirect has instituted a sham process for evaluating applicants' criminal histories that does not carefully weigh the Article 23-A factors as legally mandated—by, for example, using categorical bans on wide swaths of convictions to presumptively disqualify applicants with convictions before any individual Article 23-A analysis, excessively weighing certain Article 23-A factors over other factors (and thus fixing the outcome of its analysis before reviewing the particulars of an individual analysis), and refusing to solicit relevant information from applicants *before* performing its analysis as required under the law.

6.      Accordingly, Plaintiffs bring this case on their own behalf and that of a proposed class of all others similarly situated against FreshDirect for violating their rights under the New York City Human Rights Law ("NYCHRL"), New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.*, N.Y.C. Admin. Code § 8-101 *et seq.*, and Article 23-A of the New York State Correction Law ("Correction Law").

## STATUTORY BACKGROUND

7.      "The public policy of [New York] state [and City], as expressed in [the Correction Law], [is] to encourage the licensure and employment of persons previously convicted of one or more criminal offenses."  N.Y. Corr. Law § 753(1)(a).

8.      When the Correction Law was enacted in 1976, both the legislature and the Governor recognized the need to "reverse the long history of employment discrimination against" people with criminal records by "eliminating many of the obstacles to employment."

Governor's Bill Jacket, 1976, Ch. 931 Memorandum of Senator Ralph J. Marino & Assemblyman Stanley Fink in Support of S. 4222-C and A. 5393-C.

9.      As articulated in the NYCHRL, "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101.

10.     Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate the State's and City's clearly articulated policy.

11.     Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

12.     The use of these overbroad and/or arbitrary pre-employment bans also results in discrimination on the basis of race, ethnicity, color, and national origin because it imports the racial and ethnic disparities in the criminal justice system into the employment application process.

13.     For these, among other reasons, the NYHRL and NYCHRL forbid employers from denying employment simply because a job applicant has a criminal record. Instead, employers must engage in an individualized evaluation of each of the factors outlined in Article 23-A of the Correction Law.

14.     Article 23-A specifically prohibits an employer from denying employment to any person by virtue of their criminal record unless the employer can meet its burden of demonstrating one of two exceptions:

(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or

3

(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

N.Y. Correct. Law § 752.

15.     Article 23-A further requires that when taking any adverse action on the basis of a criminal record, the employer must consider all the following factors:

(1) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(2) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(3) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(4) The time which has elapsed since the occurrence of the criminal offense or offenses.

(5) The age of the person at the time of occurrence of the criminal offense or offenses.

(6) The seriousness of the offense or offenses.

(7) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(8) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

16.     "Employers must carefully conduct the Article 23-A analysis."  Fair Chance Act: Legal Enforcement Guidance, NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act ("FCA Guidance"), § IV.C., available at https://www1.nyc.gov/site/cchr/law/fair-chance-act.page.

17.     As part of that careful review, employers must "solicit the information necessary to properly consider each Article 23-A factor, including the applicant's evidence of rehabilitation" before completing their Article 23-A analyses.  *Id.*; *see also* N.Y. Correct. Law § 753; New York City, N.Y., Rules, Tit. 47, § 2-04, New York City, N.Y., Rules, Tit. 47, § 2-04 ("Employers, employment agencies, or agents thereof must affirmatively request information concerning clarification, rehabilitation, or good conduct while engaging in the Article 23-A analysis.").

18.     Employers "cannot disproportionately weigh any one factor over another."  FCA Guidance, § IV.C.

19.     Employers also "cannot simply presume a direct relationship or unreasonable risk exists because the applicant has a conviction history.  The employer must evaluate the Article 23-A factors using the applicant's specific information before reaching either conclusion."  *Id.*

20.     Thus, categorical barriers to employment for certain categories of criminal convictions, which presume either a direct relationship or unreasonable risk without analysis of an individual's specific circumstances, are especially problematic under the law.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action, Mr. Stewart and, upon information and belief, at least one class member, is a citizen of a state different from any Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because FreshDirect is headquartered and resides in this District and because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

5

23.     Contemporaneously with the filing of this Complaint, Plaintiffs will send a copy of the Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

**Plaintiffs**

24.     Plaintiffs and the proposed Class Members they seek to represent each are a "person" within the meaning of the NYHRL and NYCHRL.

25.     Plaintiffs each were residents of New York City when they were denied employment by FreshDirect.

26.     Plaintiffs each were denied employment by Defendants because of their criminal convictions.

**Defendants**

27.     FreshDirect is an online grocery store that delivers to residences and offices in New York City and State, as well as Connecticut, New Jersey, Pennsylvania, Delaware, and Washington, D.C.

28.     Defendant Fresh Direct Holdings, Inc. is a Delaware corporation headquartered at 2 Saint Ann's Avenue, Bronx, NY 10454.

29.     Defendant Fresh Direct, LCC is a Delaware limited liability company headquartered at 2 Saint Ann's Avenue, Bronx, NY, 10454.  It is a subsidiary of Defendant Fresh Direct Holdings, Inc.

30.     At all relevant times, Defendants have been employers and persons as defined by the NYHRL and NYCHRL, and private employers as defined by the Correction Law.

## STATEMENT OF FACTS

**FreshDirect's Uniform Criminal History Policies and Practices**

31.     FreshDirect employs uniform policies and practices to evaluate applicants'
criminal convictions.

32.     FreshDirect has memorialized these policies and practices in a policy document
entitled "Employment of Persons with Conviction History[,]" which sets forth how FreshDirect
will perform an Article 23-A analysis.

33.     As stated therein, "**it is FreshDirect's policy to most heavily weigh factors 2, 3,
6 and 8 of the eight (8) factors set forth in Article 23-A.**"

34.     Thus, FreshDirect's express policy is to disproportionately emphasize half of the
Article 23-A factors over the rest, placing significantly less weight on the policy of New York to
encourage the employment of individuals with criminal convictions (factor 1), the time that has
elapsed since the occurrence of the offense (factor 4), the age of the individual at the occurrence
of the offense (factor 5), and/or information produced by the individual regarding rehabilitation
and good conduct (factor 7).

35.     Based on FreshDirect's overweighing of factors 2, 3, 6, and 8, FreshDirect has
established categories of convictions that "may presumptively disqualify" applicants,[1] regardless
of their individual circumstances:

> a.  Violent crimes within the last 20 years for any position where the
>     applicant would: (i) "have direct customer contact;" (ii) "be required to
>     work with other employees; and/or" (iii) "be required to work without
>     close supervision[.]"

---

[1]     FreshDirect states that other convictions may also disqualify individuals from
employment; "however, the Article 23-A factors must be considered and weighed
appropriately."

7

b.  Certain crimes against minors, without any time limit, for any position where the applicant would "have direct customer contact."

c.  Certain crimes of dishonesty, without any time limit, for "any position with the Company."

d.  Certain crimes Concerning Motor Vehicles, without any time limit, for "any position requiring the operation of a motor vehicle with the Company."

36.  Consistent with FreshDirect's policy, which specifically undervalues factor 7 (information as to rehabilitation and good conduct), FreshDirect also does not affirmatively solicit relevant information from applicants before evaluating the Article 23-A factors.

37.  Further, upon information and belief, FreshDirect has not validated its criminal history policies and practices consistent with the Uniform Guidelines on Employee Selection Procedures.

**Plaintiffs' Experiences**

*Plaintiff Vidal Soler*

38.  In approximately March 2019, Mr. Soler applied for a Delivery Rep-Runner position at FreshDirect in New York, NY, through Vertex Global Solutions, Inc. ("Vertex"), a staffing agency.

39.  On or about April 2019, Mr. Soler started working at FreshDirect as a temporary worker through Vertex, out of the Pine Street depot.

40.  On or about May 2019, FreshDirect transferred Mr. Soler to work out of the 59 Columbus Avenue depot.

41.  Throughout his time with Vertex, Mr. Soler performed the same job duties as a temporary worker as FreshDirect employees.

8

42.     In approximately August 2019, after successfully working for over 520 hours over the course of approximately five months for Vertex, Mr. Soler applied to work directly for FreshDirect in the same position he was already working in the same location—that of a Delivery Rep-Runner based out of FreshDirect's 59 Columbus Avenue depot.

43.     On August 19, 2019, FreshDirect sent Mr. Soler a letter conditionally offering him employment to join FreshDirect, LLC as a Delivery Rep-Runner pending a successful background check, which Mr. Soler authorized,

44.     In a letter dated September 11, 2019, FreshDirect informed Mr. Soler that it was considering taking adverse action based on his criminal history.

45.     On or about September 12, 2019, Justyna Kopec directed Mr. Soler to meet with her at FreshDirect's Bronx location, and at that meeting informed Mr. Soler that FreshDirect was terminating his employment.

46.     FreshDirect did not permit Mr. Soler to return to work after his meeting with Ms. Kopec.

47.     In a letter dated September 23, 2019, FreshDirect again informed Mr. Soler that it was denying him employment.

48.     FreshDirect did not ask Mr. Soler for evidence of his rehabilitation before evaluating his application pursuant to the Article 23-A factors.

49.     Had they asked, FreshDirect would have uncovered significant evidence of Mr. Soler's rehabilitation, including:

    a.  After his release from prison, Mr. Soler enrolled in a nonprofit program for veterans, homeless, and formerly incarcerated individuals called Ready, Willing, and Able.

    b.  Through this program, Mr. Soler obtained certifications for food handling and baking.

9

    c.  Mr. Soler also obtained a driver's license after taking driving courses through the program.

    d.  Because of his demonstrated work ethic, Ready, Willing, and Able hired Mr. Soler and he worked at the organization for five years as a prep cook, supervisor, and coordinator.

    e.  In his coordinator role, Mr. Soler supervised up to approximately 30 individuals in preparing and serving food for 400 program participants.

50.    Upon information and belief, pursuant to FreshDirect's policies and practices, Mr. Soler's conviction(s) rendered him presumptively disqualified for the positions to which he applied.

*Plaintiff Corey Stewart*

51.    In early February 2017, Mr. Stewart applied for a Delivery Rep-Runner/Helper position with FreshDirect.

52.    On or around, February 15, 2017, Mr. Stewart received an email from FreshDirect inviting him to an open house interview on February 21, 2017.

53.    On February 21, 2017, Mr. Stewart attended the open house interview and successfully interviewed with a manager from FreshDirect.  During the interview, Mr. Stewart discussed his qualifications for the job and work history performing similar job duties, including stocking, loading, and delivering packages to private residences for a courier company, as well as providing customer service for a marketing agency.

54.    That same day the manager extended a conditional offer of employment to Mr. Stewart pending a successful background check, which Mr. Stewart authorized.

55.    In mid-March 2017, Mr. Stewart received a letter from FreshDirect informing Mr. Stewart that based on the background report, FreshDirect may deny him employment.

56.     Subsequently, Mr. Stewart received another correspondence from FreshDirect, dated March 28, 2017, denying him employment.

57.     FreshDirect did not ask Mr. Stewart for evidence of his rehabilitation before evaluating his application pursuant to the Article 23-A factors.

58.     Had they asked, FreshDirect would have uncovered significant evidence of Mr. Stewart's rehabilitation, including his participation in job readiness training programs and transitional programs supporting formerly incarcerated individuals.

59.     Upon information and belief, pursuant to FreshDirect's policies and practices, Mr. Stewart's convictions rendered him presumptively disqualified for the positions to which he applied.

60.     On or about January 12, 2018, Mr. Stewart filed a representative class Complaint of Discrimination with the City of New York Commission on Human Rights (the "Commission"), inter alia, alleging and tolling claims of criminal history discrimination under the NYCHRL.

61.     On or about April 15, 2020, Mr. Stewart requested to withdraw his Complaint from the Commission.

62.     On or about April 30, 2020, the Commission administratively closed Mr. Stewart's case, permitting him to bring suit here.

63.     Mr. Stewart is currently a resident of Chicago, Illinois.

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this case as a proposed Class action pursuant to Federal Rule of Civil Procedure ("Rule") 23 on behalf of themselves and two classes of persons (collectively, the "Classes").

65.     Plaintiffs assert the First Cause of Action against FreshDirect on behalf of the "NYCHRL Class" defined as follows:

> **NYCHRL Class**:  All individuals who, during the applicable three-year statute of limitations period from the filing of Plaintiff Stewart's complaint with the Commission, through judgment, were denied employment for positions with FreshDirect in New York City based in whole or in part on their criminal convictions.

66.     Plaintiffs assert the Second Cause of Action against FreshDirect on behalf of the "NYHRL Class" defined as follows:

> **NYHRL Class:** All individuals who, during the applicable three-year statute of limitations period from the filing of this Complaint, through judgment, were denied employment for positions with FreshDirect in New York State based in whole or in part on their criminal convictions.

67.     The members of the NYCHRL Class and the NYHRL Class are collectively referred to as "Class Members."

68.     Plaintiffs reserve the right to amend the definition of above-defined classes based on discovery or legal developments.

69.     The Class Members identified herein are so numerous that joinder of all members is impracticable.  The precise number is uniquely within FreshDirect's possession.  Class Members may be notified of the pendency of this action by notice.

70.     There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members.  Common legal and factual questions include, among others, whether:

(a)     FreshDirect's criminal history policy and practice violates the NYHRL and NYCHRL, including because the company:

> i.   Renders wide swaths of criminal convictions presumptively disqualifying without properly performing an Article 23-A analysis;
> ii.  Improperly attaches too great a weight to certain Article 23-A factors to the detriment of others;

      iii.   Refuses to affirmatively seek out information from an applicant before performing an Article 23-A analysis; and

      iv.   Otherwise improperly considered the Article 23-A factors;

(b)    A declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices; and

(c)    Compensatory, exemplary, nominal and/or punitive damages for Class Members are warranted.

71.    Plaintiffs are members of the classes they seek to represent.  Each Plaintiff has a conviction that FreshDirect's policy renders presumptively disqualifying, FreshDirect failed to affirmatively solicit information from each Plaintiff before performing its Article 23-A analysis, and FreshDirect took adverse action against Plaintiffs without proper consideration of the Article 23-A factors.

72.    Plaintiffs' claims are typical of the claims of the classes they seek to represent and Plaintiffs are entitled to relief under the same causes of action as other Class Members.

73.    Plaintiffs will fairly and adequately represent and protect the interests of Class Members because their interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent.  There is no conflict between Plaintiffs and the Class Members.  Plaintiffs have retained counsel who are competent and experienced in complex class actions, including litigation pertaining to criminal background checks, the NYCHRL, the NYHRL, and the Correction Law, other employment litigation, and the intersection thereof.

74.    Class certification is appropriate under Rule 23(b)(2) and/or (c)(4) because FreshDirect has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole (or as to a specific subset of issues).  The Class Members are entitled to declaratory and

injunctive relief to end FreshDirect's common, uniform, unfair, and discriminatory policies and practices.

75.     Class certification is also appropriate under Rule 23(b)(3) and/or (c)(4) because common questions of fact and law predominate over any questions affecting only individual Class Members.  Class Members have been damaged and are entitled to recovery as a result of FreshDirect's uniform policies and practices.  For example, FreshDirect has employed blanket exclusions for applicants with certain categories of criminal convictions, has uniformly instituted a policy to weigh certain Article 23-A factors over others, and has uniformly instituted a policy not to affirmatively solicit information from applicants relevant to the Article 23-A factors before performing the Article 23-A analysis.  A class action also is superior to other available methods for the fair and efficient adjudication of this litigation.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**FreshDirect's Discriminatory Denials of Employment under the NYCHRL
(N.Y.C. Admin. Code. § 8-101 *et seq.*, Brought by Plaintiffs on Behalf of
Themselves and the NYCHRL Class)**

76.     Plaintiffs, on behalf of themselves and the NYCHRL Class, incorporates the preceding paragraphs as alleged above.

77.     FreshDirect denied employment to Plaintiffs and the NYCHRL Class based in whole or in part on their criminal convictions.

78.     FreshDirect's discriminatory actions included:

- Attaching improper weight to certain Article 23-A factors over others;

- Disqualifying Class Members pursuant to categorical criminal history exclusions;

- Refusing to solicit information from Class Members before performing an Article 23-A analysis; and

- Otherwise improperly denying Class Members employment because of their criminal histories.

79.     As a result of FreshDirect's actions, Plaintiffs and the NYCHRL Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

80.     In addition to damages, Plaintiffs and the NYCHRL Class seek injunctive and declaratory relief to correct Defendants' discriminatory policies and practices.

## SECOND CLAIM FOR RELIEF
**FreshDirect's Discriminatory Denials of Employment under the NYHRL
(N.Y. Exec. Law § 290 *et seq.*, Brought by Plaintiffs on Behalf of
Themselves and the NYHRL Class)**

81.     Plaintiffs, on behalf of themselves and the NYHRL Class, incorporates the preceding paragraphs as alleged above.

82.      FreshDirect denied employment to Plaintiffs and the NYHRL Class based in whole or in part on their criminal convictions.

83.     FreshDirect's discriminatory actions included:

- Attaching improper weight to certain Article 23-A factors over others;

- Disqualifying Class Members pursuant to categorical criminal history exclusions;

- Refusing to solicit information from Class Members before performing an Article 23-A analysis; and

- Otherwise improperly denying Class Members employment because of their criminal histories.

84.     As a result of FreshDirect's actions, Plaintiffs and the NYHRL Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

85.     In addition to damages, Plaintiffs and the NYHRL Class seek injunctive and declaratory relief to correct Defendants' discriminatory policies and practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members pray for relief as follows:

(a)     A declaratory judgment that the practices complained of herein are unlawful and violate the NYCHRL and NYHRL;

(b)     A preliminary and permanent injunction against FreshDirect and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

(c)     An order that FreshDirect institute and carry out policies, practices, and programs that provide equal employment opportunities for applicants with criminal records who would be eligible for employment under proper application of Article 23-A, and that FreshDirect eradicate the effects of past and present unlawful employment practices;

(d)     Certification of the case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (3) and/or (c)(4);

(e)     Designation of Plaintiffs as representatives of Class Members;

(f)     Designation of Plaintiffs' counsel of record as Class Counsel;

(g)     Restoring of Plaintiffs and Class Members to their rightful positions at FreshDirect or those positions equivalent at FreshDirect (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

(h)     An award of backpay and/or compensatory damages;

(i)     An award of nominal and/or exemplary damages;

(j)     An award of punitive damages;

(k)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(l)     Such other injunctive and/or declaratory relief as necessary to correct FreshDirect's discriminatory policies and practices;

(m)     Pre-judgment and post-judgment interest, as provided by law;

(n)     Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class Members, and the risks they have taken and will take; and

(o)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
        May 1, 2020

                                    Respectfully submitted,

                                    By:   /s/ Ossai Miazad

                                    **OUTTEN & GOLDEN LLP**
                                    Ossai Miazad
                                    Christopher M. McNerney
                                    685 Third Avenue, 25th Floor
                                    New York, New York 10017
                                    Telephone:  (212) 245-1000
                                    Facsimile:  (646) 509-2060

                                    *Attorneys for Plaintiffs and the Putative Class*